UNITED STATES *v.* DYSON SHIPPING CO. (No. 4254)[1]

United States Court of Customs and Patent Appeals, February 5, 1940

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Richard E. FilzGibbon*, special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument December 6, 1939, by Mr. Lawrence]

C. A. D. 96.

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Bland, Judge, delivered the opinion of the court:

The appellee in 1936 imported from Japan what it terms a "Dental Operating Pump Chair," invoiced as "1 set Iziri Dental Operating Pump Chair Model 'K', Mahogany Duco Finish," which the Collector of Customs at the port of New York classified as a manufacture of metal under paragraph 397 of the Tariff Act of 1930 and assessed with duty at 45 per centum ad valorem. The importer protested the said classification and assessment of duty, claiming that the merchandise was properly dutiable at 35 per centum ad valorem as a *dental instrument* under paragraph 359 of said act, at 40 per centum ad valorem as a *scientific or laboratory instrument* under paragraph 360 of said act, or at 27½ per centum ad valorem under the provision in paragraph 372 of said act reading "all other machines."

From the judgment of the United States Customs Court, Second Division, which sustained the importer's protest and held the merchandise dutiable at 35 per centum ad valorem under paragraph 359 as a dental instrument, the Government has here appealed.

The pertinent provisions of the tariff act involved follow:

Par. 359. * * * *dental instruments*, and parts thereof, including hypodermic needles, hypodermic syringes, and forceps, wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal, finished or unfinished, 35 per centum ad valorem * * *. [Italics ours]

Par. 360. *Scientific and laboratory instruments*, apparatus, utensils, appliances * * * and parts thereof, wholly or in chief value of metal * * * 40 per centum ad valorem; * * *. [Italics ours]

Par. 372. * * * *all other machines*, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *. [Italics ours]

Par. 397. *Articles* or wares not specially provided for * * * if *composed wholly or in chief value of iron, steel*, lead, copper, brass, nickel, pewter, zinc, aluminum, *or other metal*, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem. [Italics ours]

At the trial below, the importer introduced the testimony of one witness, Joseph Levy, who did not disclose his exact relationship to the importer but stated that he had been for the last 19 years engaged in buying, selling and assembling dental equipment and that he "worked on a chair on the Other Side as a dentist"; that the imported chair came in in a knocked-down condition and that he assembled and sold it; and that it contained a pump mechanism which he described. Such mechanism raises and lowers the seat of the chair and is of the ordinary hydraulic kind. This part of his testimony was directed toward showing that the chair was a machine, and for reasons presently shown it is not necessary to further describe the

pump mechanism. As to the use of the chair, the witness gave the following testimony:

X Q. Now, there is nothing about that chair, as illustrated in Illustrative Exhibit A, that dedicates it particularly to use as a dental chair, is there?—A. No, sir.

X Q. In other words, such a chair capable of being raised and lowered is used in dental offices?—A. Yes.

X Q. And it is also used, similar types of chairs are used, in barber shops?—A. Yes.

X Q. And in beauty parlors, for raising and lowering?—A. Yes.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. This chair is not used in a dental laboratory?—A. No, sir.

X Q. It is used in the office where the patient appears?—A. Yes.

X Q. There is no apparatus, there is nothing you would identify from your experience, as a dental fixture, apparatus, instrument, etc., that is attached to that chair, Illustrative Exhibit A, is there?—A. What do you mean by "instrument"?

X Q. Is there anything on that chair, was it as assembled by you which would be called by you a dental instrument or dental tray or anything other than a seat, an arm rest, and an adjustable head rest?—A. No.

X Q. That is all there were?—A. Yes.

Mr. OLIVER. That's all.

Redirect examination by Mr. McDONALD:

R. D. Q. Did you ever see such a chair used in any other place than in a dentist's office?—A. No, sir.

Judge DALLINGER. What is your business?

The WITNESS. I am buying and selling supplies.

Judge DALLINGER. For whom?

The WITNESS. To the dentists.

Judge DALLINGER. Do you deal with manufacturers or dentists?

The WITNESS. Wholesale dealers.

By Mr. McDONALD:

R. D. Q. The only kind of goods you engage in is the buying and selling of dental equipment?—A. Dental equipment and supplies.

Illustrative Exhibit A—a circular or advertisement—was introduced through the witness Levy and is a sheet of colored paper upon which is a picture of the chair here involved, which chair is there referred to as a "Dental Operating Chair." The picture shows it to be a chair of the ordinary type seen in barber shops, beauty parlors, and dentists' offices in that it has a movable headrest of the ordinary type, thick leather cushions, a footrest, and provision for lowering the chair through hydraulic action and for lowering the back so as to permit a reclining position in the chair. There are no accessories such as lights, shelves, sputum vessels, or the like attached to the chair nor does the chair appear to be designed for a use requiring such accessories.

The trial court in rendering its decision said:

Upon this record, in spite of the fact that counsel for the plaintiff appears to place no reliance upon the fact that the chair in question is a dental instrument,

but in their brief filed herein seem to rely entirely on the claim that the chair is a machine not specially provided for, we are of the opinion that the plaintiff has made out a *prima facie* case that the chair in question is a dental chair. The plaintiff's witness has been engaged in buying and selling dental equipment and supplies and has never seen a chair of this particular type used anywhere else than in dental offices. Moreover, the exhibits advertise the chair as a dental chair. The mere fact that the witness on cross-examination stated that the chair may be used in barber shops or beauty parlors does not, in our opinion, overcome the other evidence that a chair of this particular kind is chiefly used by dentists.

The term "dental instruments" is a designation by use, and to be a dental instrument under the tariff act involved, such instrument would have to belong to a class of articles which were, on or prior to the date of the passage of the tariff act in question, chiefly used in dentistry.

The action of the collector carried with it a presumption that the classification was correct, as well as a presumably correct finding that chairs of that class to which the one at bar belongs were not chiefly used in the profession of dentistry at the required time. We have looked over the meager record with care and find no proof on the subject except that which is herein quoted and referred to, and such testimony, in our judgment, falls far short of meeting the burden placed upon the importer. In the first place, the witness stated that similar types of chairs are used in barber shops and in beauty parlors. He stated that he was a dealer in dental supplies and equipment and sold to wholesale dealers in dental equipment and supplies. He stated positively that there was nothing about the chair which dedicated it particularly to use as a dental chair. He stated, however, that he had never seen such a chair used in any other place than in a dentist's office. For all we know, he never had the opportunity of seeing it in any other place and certainly the fact that he had never seen it in any other place, while proper and competent testimony, is not sufficient to prove that it was on any date chiefly used in a dentist's office, especially in view of the fact that he had already said that there was nothing about the chair which dedicated it to the dental use, and that it was the same kind of chair that was used elsewhere.

It is our opinion that the record as a whole does not show that the presumed finding of the collector that the chair was not so chiefly used in the dental profession has been overcome.

As to the protest claim that the imported article is a scientific or laboratory instrument dutiable at 40 per centum ad valorem under paragraph 360 of said act, this claim was not pressed here, but we see nothing about the chair to even suggest a scientific character, much less is there anything about it to suggest that it is used in pure science.

See *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743. The testimony is definite that it is not used in a laboratory. Therefore, it is not a scientific or laboratory instrument as claimed.

As to the claim in the protest that the chair is dutiable under paragraph 372 of said act at 27½ per centum ad valorem as a machine, we need not pass upon the merits of the same for the reason that in any event appellee, not having cross-appealed, could receive no more favorable judgment than that appealed from. *United States.* v. *Pyrometer Instrument Co.*, 21 C. C. P. A. (Customs) 376, T. D. 46910.

The judgment of the United States Customs Court is *reversed.*